# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTONIO WORRELL,**

    **Petitioner,**

**v.**                                         **Civil Action No. 5:07cv90**
                                                        **(Judge Stamp)**

**KUMA DEBOO, Warden,[1]**

    **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the petitioner's § 2241 habeas corpus petition, his amendment to the petition,[2] the Government's response and the petitioner's reply. In the petition, the petitioner challenges revocation proceedings held by the United States Parole Commission ("the Commission"). This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

### I. Factual and Procedural History

According to the parties, the petitioner was convicted in the Superior Court of the District of Columbia to the following terms of imprisonment:

(1) 0 months to 12 years on January 24, 1980, for burglary;

(2) 5-15 months on April 23, 1980, for unauthorized use of a vehicle; and

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kuma Deboo, Warden of FCI-Gilmer, is hereby substituted for Joyce Francis, former Warden of FCI-Gilmer, as the proper party respondent.

[2] The "Amended Petition" requests "immediate release or [in] the alternative credit for the period of time May 8, 1998 to January 8, 2006 . . . and for grounds one and two to include a violation of "Title 18 Chapter 25 § 494. Title 18 Part I Chapter 73 § 1505." It does not otherwise alter or amend the substance of the claims made in the petition.

(3) 16 months to four years on April 29, 1980 for unauthorized use of a vehicle.

Resp't Ex. A-1 to A-3. On August 3, 1981, the petitioner was paroled with a full term date of October 12, 1996. Ex. B. While on parole, the petitioner committed a new crime and was sentenced to 18 months to six years on July 19, 1982. Ex. C. Consequently, the petitioner's parole was revoked by the D.C. Board of Parole ("the Board"), on August 27, 1982. Ex. D. The petitioner was reparoled on December 2, 1983, with a new full term date of October 11, 1997. Ex. E.

On January 21, 1986, the petitioner was admitted to the North Carolina Division of Prisons to serve an 18-year sentence for his conviction of being an accessory after murder and multiple counts of possessing stolen property. Ex. F. As a result, the Board issued a warrant that was lodged as a detainer. Ex. G. Thus, upon the petitioner's release from the custody of the State of North Carolina on or about January 27, 1992, his D.C. parole was revoked. Ex. H. Shortly thereafter, the petitioner escaped from custody, and on July 25, 1994, was convicted by the D.C. Superior Court for attempted prison breach. Ex. I. The petitioner received a term of imprisonment of 90 days. Id. The petitioner was reparoled on May 8, 1998, with a new full term date of January 8, 2006. Ex. J. However, the petitioner did not sign the "Statement of the Conditions Under Which [his] Parole is Granted." Id.

On June 12, 2002, the plaintiff was arrested for carrying a pistol without a license/felon in possession of a firearm. Ex. L. Although the petitioner's Community Supervision Officer (CSO) requested the Commission[3] issue a warrant, the Commission instead requested additional documentation of the petitioner's arrest. Ex. M. It appears that the petitioner was also charged with

---

[3] Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) ("Revitalization Act"), on August 5, 1998, the United States Parole Commission assumed exclusive jurisdiction over all District of Columbia Code Offenders. See Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C.Cir. 1998).

first degree assault with a knife around that same time, and the Commission also requested more information on that offense. Id. However, the CSO informed the Commission that the assault with a knife charge had been Noelle Prossed. Ex. N. Nonetheless, the petitioner was convicted by the United States District Court for the District of Columbia of the unlawful possession of a firearm charge. Ex. O. The petitioner was sentenced to time served in that case on August 20, 2004. Ex. R. However, although the petitioner was set to serve a term of supervised release on that charge, he never reported for parole supervision. Ex. S. Thus, on February 23, 2005, the Commission prepared the necessary documents for a parole violator warrant. Ex. U, V and W. Those documents were signed by Commissioner Isaac Fulwood on February 24, 2005.[4] Ex. V.

On March 27, 2006, the Commission was advised by the United States Marshal Service ("USMS") that it had lost or misplaced the original February 24, 2005, warrant. Ex. FF (Randall Declaration) at ¶ 4. Therefore, the Marshal Service requested another copy of the warrant. Id. However, the Commission could not find the petitioner's parole file at that time. Id. at ¶ 5. Therefore, the Commission pulled an unsigned copy of the warrant from its computer directory and Commissioner Fulwood resigned the warrant as of that date, March 27, 2006. Id. That copy was provided to the USMS for execution. Id.

The petitioner was arrested on the parole violation warrant on April 6, 2006. Ex. Y. At the petitioner's probable cause hearing, the hearing examiner found that there was probable cause to believe the petitioner had violated the conditions of his parole. Id. Accordingly, a parole revocation

---

[4] Unfortunately, the date on the warrant is somewhat ambiguous. It appears to the Court that the warrant was signed on February 24, 2005. However, because of the ambiguity, the petitioner, and others, have construed the date as February 27, 2005. The undersigned notes that the Commission has filed an affidavit stating that the warrant was signed on February 24, 2005, see Ex. FF (Declaration of Jordana Randall) (hereinafter "Randall Declaration"), and the Court believes from an examination of the document, that the 24th is the correct date.

3

hearing was scheduled for June 8, 2006. Id. On May 20, 2006, the Commission was informed that the Public Defender's Office no longer represented the petitioner. Ex. Z. Because petitioners' counsel was replaced, the Commission granted petitioner additional time to prepare for his revocation hearing. Ex. AA. The petitioner's revocation hearing was held on November 1, 2006. Ex. BB. At that hearing, the petitioner argued that the Commission's warrant was executed after the expiration of his full term date, and therefore, the Commission did not have jurisdiction to revoke his parole. Id. The Commission found that the warrant was timely issued and revoked the petitioner's parole. Ex. CC. The petitioner appealed that decision to the National Appeals Board. Ex. DD. The Commission's decision was affirmed on appeal. Id.

## II. Contentions of the Parties

### A. The Petition

In the petition, the petitioner asserts the following grounds for relief:

(1) the Commission made fraudulent documents; warrants to keep jurisdiction;

(2) the Commission member signed a declaration in D.C. Superior Court that was false;

(3) the petitioner was arrested on the warrant signed February 27, 2006, not the warrant signed in 2005;

(4) neither the Board nor the petitioner signed a parole certificate, therefore the agreement violated the Commission's rules;

(5) the Commission had no reason to delay the issuance of a warrant from 1998 to 2006 or for his 2002 conviction; and

(6) he has proven that the Commission sent no warrant of any form to the United States Marshal Service in the year 2005 for his arrest or detainment.

### B. The Respondents' Response

In her response, the respondent requests that the petitioner's petition be denied and dismissed with prejudice. In support of that request, the respondent argues:

(1) the petitioner's claim with regard to the Commission's authority to revoke his sentence because the warrant was issued after the expiration of his full term date was adjudicated on the merits by the Superior Court of the District of Columbia and this argument is precluded under the principle of *res judicata*;

(2) the Commission's warrant was issued before the expiration of the petitioner's sentence;

(3) there is no merit to the petitioner's claim that the Commission engaged in fraud when it issued a warrant for the petitioner's arrest;

(4) there is no merit to the petitioner's claim that when he was released on parole in 1998 he was not subject to parole supervision because he did not sign his parole certificate; and

(5) the Commission did not lack the authority to revoke the petitioner's parole because of a delay in the issuance of the warrant.

### C. The Petitioner's Traverse

The petitioner's traverse to the respondent's response is more or less a reiteration of the claims and arguments made in his petition. However, the petitioner also asserts that the respondent tries to mislead the court in her response and otherwise objects the arguments made therein.

### III. Analysis

### A. Ground One - Fraudulent Documents/Warrant to Keep Jurisdiction

In ground one, the petitioner asserts that the Commission "made fraudulent documents and knowing(ly) submitted false statements(,) in order to aviod (sic) losing jurisdiction over [him]." Petition at 5. In support of this claim, the petitioner asserts that the Commission falsified

5

government documents when it made fictitious arrest warrants in his case. Id. Moreover, the petitioner asserts that when questioned by United States Congresswoman, Eleanor Holmes Norton, Parole Commission Chariman, Edward F. Reilly, Jr., gave false information. Id.

With respect to this claim, the respondent asserts that in order to state a claim with regard to this issue, the petitioner must first overcome the "strong presumption of good faith that attaches to the Parole Commission." Response (dckt. 13) at 8. In support of this argument, the respondent cites <u>Sacco v. United States Parole Comm'n</u>, 639 F.2d 441, 443 (8th Cir. 1981) and <u>Bridge v. United States Parole Commission</u>, 981, F.2d 97, 106 (3d Cir. 1992), both of which find that the actions of the Commission are entitled to a presumption of integrity and good faith. Response at 8.

The respondent further asserts that the petitioner has failed to show that the Commission's explanation for the differing dates on the warrants is either unreasonable or false. Id. at 9. According to the respondent, the Commission has explained that the warrant was prepared on February 23, 2005, but was not signed by Commissioner Fulwood until February 24, 2005. Id. In addition, the respondent contends that the second warrant, issued on March 27, 2006, was merely a duplicate warrant sent by the Commission to the USMS at its request. Id. The respondent further contends that the USMS requested a copy of the warrant when the original was lost, and that the Commission, unable to find the original warrant at that time, prepared a new warrant from a computer template. Id. According to the respondent, that warrant was resigned by Commissioner Fulwood in March of 2006. Id.

Finally, the respondent asserts that Chairman Reilly's letter to Congresswoman Norton does not support the petitioner's argument that the Commission issued a fraudulent warrant. Id. at 8. Instead, the respondent contends that Chairman Reilly simply misread the date Commissioner

Fulwood signed the warrant. Id. In addition, the respondent asserts that the petitioner has failed to show that the signatures on the warrants are different, implying that one of the warrants is a forgery. Id. at 9.

As noted by the respondent, the petitioner has failed to show any evidence that the warrants issued were either fraudulent or forged. Moreover, the petitioner has failed to show that the explanation given by the Commission for the differing dates is unreasonable or false.[5] In the absence of such showing, the petitioner cannot overcome the presumption of good faith that attaches to those documents. See also Franklin v. Fenton, 642 F.2d 760, 764 (3d Cir. 1980) (upholding the Commission's authority to issue a duplicate warrant after the expiration of the parolee's sentence where the original could not be located). Accordingly, the petitioner has failed to show that the Commission fraudulently or falsely made the warrants in an effort to retain jurisdiction over him.

**B.  Ground Two - False Declaration**

In ground two, the petitioner asserts Ms. Jordana Randall, a case analyst for the Commission, signed a declaration stating that the petitioner's original arrest warrant was issued February 24, 2005, and that a second warrant, dated March 27, 2006, was later provided to the USMS pursuant to its request. Petition at 6. The petitioner asserts that this is the same information Mr. Reilly gave Congresswoman Norton, and that neither Ms. Randall nor Mr. Reilly has produced any documentation of this alleged request by the USMS. Id. The petitioner asserts that these warrants are "made from each other" and clearly fraudulent. Id. Moreover, the petitioner asserts that the USMS would never have made such a request because a copy of his warrant would have been filed "in the computer" and the USMS would have had no reason to request a replacement copy of the

---

[5] It is clear that Chairman Reilly's assertion to Congresswoman Norton, that the original warrant was signed on March 27, 2005, was simply a misreading of the date. See n. 4, *infra*.

7

warrant. Id.

With the exception of the petitioner's claim of computer copies, this issue was addressed in the previous ground and should be denied.[6]

As to the petitioner's argument about computer copies, the respondent notes that this argument is meritless. Response (dckt. 13) at 9. As part of its procedures, the USMS requires an original hard copy of the warrant to process the petitioner's arrest. Id. Thus, assuming a computer copy existed, the USMS would not have been able to simply pull a copy of the petitioner's warrant from a computer database. Therefore, this claim is without merit.

**C.    Ground Three - Date of Warrant**

In ground three, the petitioner asserts that he was arrested in his home on April 6, 2006, on a parole violation warrant. Petition at 7. The petitioner asserts that the warrant was signed March 27, 2006, by Commissioner Isaac Fulwood. Id. However, the petitioner asserts that the full term expiration date of his sentence was January 8, 2006, and therefore, the warrant was invalid. Id. In addition, the petitioner asserts that pursuant to 2.44(c) of the U.S. Parole Manual, a warrant may only be issued with 180 days of the prisoner's maximum term. Id. Thus, the petitioner asserts that any warrant in his case would have had to issue before July 8, 2005. Id.

In this ground, the petitioner also asserts that the basis for his parole violation warrant was the failure to report from May 1998 and his August 2004 district court conviction. Id. The petitioner complains that it took seven years for the Commission to violate him for failing to report in May 1998. Id.

---

[6] The documents of the Commission are entitled to a presumption of good faith to which the petitioner has failed to rebut. There is no evidence that Ms. Randall's declaration is false. In fact, Ms. Randall swore, under penalty of perjury, that the statements made in her declaration are true and correct. Resp't Ex. FF. (Randall Declaration).

In her response, the respondent notes that the petitioner filed a writ of habeas corpus as to this issue with the Superior Court of the District of Columbia. Response (dckt. 13) at 6, n. 6. This issue was fully considered on the merits by the D.C. Superior Court and relief was denied on September 29, 2006. Id. Thus, the respondent argues that this issue is barred by the principles of res judicata. See Warren v. McCall, 709 F.2d 1183, 1184 (7th Cir. 1983) (a final judgment on the merits precludes a party from relitigating the issue in subsequent litigation).

To the extent that this Court can reconsider this issue in these proceedings, the undersigned agrees with the D.C. Superior Court and finds that this issue lacks merit. The original warrant issued by Commissioner Fulwood was signed on February 24, 2005, well before the expiration of the petitioner's full term date. Pursuant to D.C. Code § 24-204, the petitioner was subject to parole supervision until the expiration of his sentence. Moreover, as previously noted, the undersigned has found that the petitioner's claims regarding the authenticity of his February 24, 2005, arrest warrant without merit. Thus, the timely execution of the petitioner's arrest warrant allowed the Commission to retain jurisdiction over the petitioner even after his full term expiration date passed. See 28 C.F.R. § 2.98(e) (a parole violation warrant must be issued prior to the execution of the term of the parolee's sentence); Martin v. Luther, 689 F.2d 109, 114 (7th Cir. 1982) (the Commission retains jurisdiction to revoke parole after expiration of maximum term if warrant issued prior to expiration); Anderson v. United States, 898 F.2d 751, 752 (9th Cir. 1990) (issuance of parole violator warrant acts to tolls running of sentence). Thus, this ground lacks merit.

In addition, as noted by the respondent in her response, the petitioner's argument regarding the maximum term of his sentence is also without merit. The plaintiff asserts that because the warrant was not issued before 180 days of his maximum term, or July 8, 2005, the warrant was not

valid. The petitioner cites to § 2.44(c) of the parole manual in support of this claim. However, 28 C.F.R. § 2.44(c) (for D.C. parole offenders 28 C.F.R. § 2.98(d) is the analogous section) states that for prisoners released under 18 U.S.C. § 4164, a summons must be issued within the maximum term, less 180 days. Section 4161, however, relates to mandatory release dates, [7] not full term expiration dates. Thus, this provision is inapplicable to the petitioner.

**D.   Ground Four- Unsigned Parole Certificate**

In ground four, the petitioner asserts that he was released on parole from the State of North Carolina on May 11, 1998. Petition at 8. The petitioner asserts that when he returned to Washington, D.C., and reported to his parole officer, he was told that there were no records of his being on parole under that office. Id. The petitioner asserts that there was no record of his being on parole at that time due to a mistake by the Commission in his parole release paperwork. Id. Specifically, the petitioner asserts that the Commission failed to sign his parole paperwork and did not require him to sign his Certificate of Parole at the time he was released. Id. Therefore, the petitioner asserts that he could not have violated the conditions of his parole because he never agreed to abide by such conditions. Id.

With regard to this claim, the respondent asserts that "ministerial mistakes" do not release an offender from serving the remainder of his sentence. Response (dckt. 13) at 10 (citing Green v. Christiansen, 732 F.2d 1397, 1399 (9th Cir. 1984)). Thus, the failure to sign a parole certificate, to extent that it is required,[8] does not excuse a parolee of his parole obligations. Moreover, the

---

[7] According to the respondent, the petitioner's mandatory release date was calculated by the D.C. Department of Corrections to be in June of 2001. See Response (dckt. 13) at 8.

[8] The parole certificate states "this action is subject to the above-named individual's signing an agreement to abide by and comply with all of the conditions of parole as shown on the reverse side of this certificate." Response (dckt. 13) at 10. However, the certificate of parole was a document created and used

10

respondent contends that there are some obligations of parole that are so fundamental to supervision that no parolee can reasonably believe he is not required to perform them. See United States v. Manfredonia, 341 F.Supp. 790 (S.D.N.Y. 1972). The respondent argues that the requirement to report is one of those fundamental obligations. Id. at 795 (the requirement to report is "centrally and necessarily implied in the probationer's status").

In this case, the petitioner was released on parole from the State of North Carolina. Regardless of whether he signed a Certificate of Parole, the petitioner knew that his D.C. sentence did not expire until January 8, 2006, and that he was still subject to parole supervision in those cases. In addition, the petitioner clearly understood that he had an obligation to report as he alleges that he did in fact attempt to report, but that he was told there was no record of his supervision. However, instead of attempting to find and correct the mistake, the petitioner chose to proceed as if he was under no parole obligation -- a situation that he knew was false. See United States v. Merritt, 478 F.Supp. 804, 807 (D.D.C. 1979) ("a convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution"). Thus, the petitioner was not discharged from his parole obligation at that time. See Russie v. United States Department of Justice, 708 F.2d 1445, 1448 (9th Cir. 1982) (Commission is not estopped from exercising jurisdiction despite probation officer's mistaken order of discharge). Therefore, even assuming the petitioner did not sign a Certificate of Parole at the time he was

---

by the D.C. Board of Parole. Id. at n. 8. At the time the petitioner was released to parole in May of 1998, the Commission had assumed jurisdiction over all D.C. parolees. See n. 3, *infra*. Thus, to the extent that the form was still being utilized, it would have been sent to the D.C. Department of Corrections. See Response (dckt. 13) at 10, n. 8. However, the file sent to the Commission does not contain a copy of such document. Id. Therefore, the respondent argues that in light of the presumption of administrative regularity, the petitioner has failed to show that such document was not signed. Response at 10 (citing United States v. Chemical Foundation, 272 U.S. 1, 14 (1926) ("[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

released by North Carolina, such circumstance simply does not equate with a finding that the petitioner was not on parole at that time. The petitioner was clearly aware of his obligation and simply chose not to act diligently upon being informed that there was no record of his parole. Consequently, the petitioner is not entitled to habeas relief on this ground.

**E.   Ground Five - Delay in Issuing Warrant**

In ground five, the petitioner asserts that he was arrested on June 12, 2002, for possession of a firearm. Petition at 8. The petitioner was subsequently charged in the United States District Court for the District of Columbia. Id. The petitioner asserts that the Commission knew about his conviction in 2002, but did nothing. Id. Moreover, the petitioner asserts that the Commission did nothing when he was released from that sentence on August 20, 2004. Id. The petitioner asserts that the Commission had no reason to delay a warrant and that the decision to issue a warrant after the expiration of his sentence was prejudicial. Id. In addition, the petitioner complains that the Commission's decision to continue him to the expiration of his sentence went outside the guideline range of 18 to 24 months. Id.

In the response, the respondent asserts that there is no merit to this claim. Response (dckt. 13) at 11-12. In support of this contention, the respondent asserts that in order for a petitioner to establish that he is entitled to habeas relief on this issue, he must show that the delay in issuing the warrant was unreasonable or prejudicial. Id. at 11 (citing Gaddy v. Michaels, 519 F.2d 669, 673 (4th Cir. 1975)). Moreover, the respondent notes that the Commission is not an investigative agency and must rely on information provided by other agencies. Id. (citing Fardella v. Garrison, 698 F.2d 208, 211 (4th Cir. 1982)).

The respondent notes that the petitioner first violated the terms of his parole by failing to

report to parole supervision upon his release by the State North Carolina in May 1998. Id. The respondent further contends that the Commission acted upon this information as soon as it was discovered. Id. Moreover, the respondent argues that the Commission acted with reasonable diligence in obtaining information about the petitioner's 2004 conviction as soon as it was made aware of it. Id. According to the respondent, the Commission's failure to act as soon as the petitioner was charged, is inapposite. Id. Pursuant to 28 C.F.R. § 2.98(c), "[i]n the case of a parolee who is charged with a criminal offense and who is awaiting disposition of such charge, issuance of a summons or warrant may be (1) temporarily withheld; (2) issued by the Commission and held in abeyance; (3) issued by the Commission and a detainer lodged with the custodial authority; or (4) issued for the retaking of the parolee."

Furthermore, the respondent asserts that the delay in the petitioner's case did not prejudice his ability to challenge the parole violations or to produce mitigating evidence. Response at 13. In fact, the respondent argues that the petitioner's subsequent conviction in 2004 precludes an argument that he was prejudiced by the delay. Id. Additionally, the respondent argues that waiting until charges are resolved can be beneficial for a parolee. Id. at 13-24 (citing Inmates' Councilmate Voice v. Rogers, 541 F.2d 633, 635-36 (6th Cir. 1976) (holding that a parolee may be prejudiced by a parole hearing being conducted before a criminal trial); Burdette v. Nock, 480 F.2d 1010 (6th Cir. 1973) (in fairness to parolee, "he should first be afforded the opportunity to have his case tried before a jury")).

In this instance, the undersigned agrees with the respondent that the petitioner has failed to show how he was prejudiced by the delay in his proceedings. The Commission acted upon the parole violations soon after they were discovered. Moreover, the Commission acted within its

statutory authority to withhold further proceedings when the petitioner was arrested by the D.C. District Court, and the violation warrant issued soon after the petitioner's conviction in that case. The actions of the Commission were not unreasonable. Thus, this claim has no merit and should be denied.

**F.   Ground Six - No Warrant Sent to USMS in 2005**

In ground six, the petitioner asserts that there was never a warrant sent to the USMS in 2005 by the Commission. Petition at 9. In support of this claim, the petitioner asserts that he was to have committed a violation of his district court supervision on February 17, 2005, and sent to FCI-Gilmer shortly thereafter. Id. The petitioner further asserts that on April 15, 2005, and May 15, 2005, officials at FCI-Gilmer contacted the USMS to ascertain whether the petitioner had any outstanding warrants or detainers. Id. The petitioner asserts that the USMS informed FCI-Gilmer that there was no record of any warrants or detainers against the petitioner at that time. Id. Moreover, the petitioner was released from his violation term on February 21, 2006. Id. At that time, officials at FCI-Gilmer again ran an NCIC check on the petitioner for any outstanding warrants or detainers. Id. The petitioner asserts that there were none. Id.

However, even assuming these allegations are true, such allegations are not otherwise inconsistent with the facts presented here, and are insufficient to show that a warrant was never sent to the USMS in 2005. The petitioner's original parole violator warrant from 2005 had been lost. That does not mean it did not exist. If the warrant was lost or misplaced, it would not necessarily show on an NCIC report, nor would the USMS be able to report the warrant to Bureau of Prisons officials. Based on the circumstances of this case, the mere fact that BOP officials were not told about the petitioner's parole violator warrant, simply does not prove it did not exist or that it was

never sent to the USMS in 2005. Accordingly, the ground is without merit and should be denied.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (dckt. 1) be **DENIED** and **DISMISSED with prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* petitioner be certified mail, return receipt requested, and to counsel of record via electronic means.

DATED: February 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE